**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| GIORDANO'S ENTERPRISES, INC., *et al.*, | ) | Case No. 11-06098 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | **Hearing Date: May 25, 2011** |
| | ) | **Hearing Time: 9:30 a.m.** |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **Wednesday, May 25, 2011, at 9:30 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Eugene R. Wedoff, Room 744, United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or any other Judge sitting in his place or stead, and then and there present the **Application of Chapter 11 Trustee for Order Under 11 U.S.C. §§327 and 328(a) Authorizing the Retention and Employment of William Blair & Company, L.L.C. as Investment Banker and Hilco Real Estate, LLC as Real Estate Advisor**, a copy of which is hereby served upon you.

Dated: May 20, 2011

PHILIP V. MARTINO, not individually,
but solely as Chapter 11 Trustee
for Giordano's Enterprises, Inc., *et al.*

By: ___/s/ Christopher Combest_____
        One of his Proposed Attorneys

Christopher Combest
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, Illinois 60654-3406
Phone: (312) 715-5000
FAX: (312) 632-1727
christopher.combest@quarles.com

## CERTIFICATE OF SERVICE

I, Christopher Combest, an attorney, certify that, on the 20th day of May, 2011, I caused the foregoing **Application of Chapter 11 Trustee for Order Under 11 U.S.C. §§327 and 328(a) Authorizing the Retention and Employment of William Blair & Company, L.L.C. as Investment Banker and Hilco Real Estate, LLC as Real Estate Advisor** to be filed electronically via the Court's CM/ECF System and thereby to be served upon the parties listed

below, to whom the System automatically delivered an electronic copy at the following electronic mail addresses:

- Thomas V Askounis    taskounis@askounisdarcy.com, jburt@askounisdarcy.com
- Jennifer S Burt    jburt@askounisdarcy.com
- Joshua W Cohen    jwcohen@daypitney.com
- Thomas R. Fawkes    tfawkes@freebornpeters.com, bkdocketing@freebornpeters.com
- Chester H. Foster    chf@fostersmithlaw.com, jbf@fostersmithlaw.com;dbf@fostersmithlaw.com
- James G Froberg    jgfroberg@lowis-gellen.com, tpeckham@lowis-gellen.com
- Cameron M Gulden    USTPRegion11.es.ecf@usdoj.gov, cameron.m.gulden@usdoj.gov;USTPRegion11.es.ecf@usdoj.gov
- Aaron L Hammer    ahammer@freebornpeters.com, bkdocketing@freebornpeters.com
- Christopher J. Horvay    chorvay@gouldratner.com
- Brian J Jackiw    bjackiw@freebornpeters.com, bkdocketing@freebornpeters.com
- Vivek Jayaram    vivek@jayaramlaw.com
- Gregory J Jordan    gjordan@jka-law.com
- Danielle Juhle    danielle.juhle@goldbergkohn.com, kristina.bunker@goldbergkohn.com
- Kathryn A Klein    iln@riezmanberger.com, riezmanberger@gmail.com
- Randall Klein    randall.klein@goldbergkohn.com, amy.halpin@goldbergkohn.com;logan.stortz@goldbergkohn.com
- Richard S Lauter    rlauter@freebornpeters.com, bkdocketing@freebornpeters.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Joanne Lee    jlee@foley.com
- Terri M Long    Courts@tmlong.com
- Mary E Olson    molson@wildman.com, ecf-filings@wildman.com
- Andre Ordeanu    andre@zanesmith.com, Patty@Zanesmith.com
- Lars A Peterson    lapeterson@foley.com
- James M Philbrick    jmphilbrick@att.net
- Mark L Radtke    mradtke@shawgussis.com, bharrington@shawgussis.com
- Jason R. Sleezer    jsleezer@skcounsel.com, rybarra@skcounsel.com
- Michael J. Small    msmall@foley.com, khall@foley.com
- Jeffrey Strange    jstrangelaw@aol.com, william.georgakis@gmail.com
- Pia N Thompson    pthompson@gouldratner.com, lnaples@gouldratner.com
- Steven B Towbin    stowbin@shawgussis.com

<div style="text-align:right">
/s/ Christopher Combest  
Christopher Combest
</div>

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| GIORDANO'S ENTERPRISES, INC., *et al.*,[1] | ) | Case No. 11 - 06098 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | **Hearing Date:**  May 25, 2011 |
| | ) | **Hearing Time:**  9:30 a.m. CDT |

**APPLICATION OF CHAPTER 11 TRUSTEE FOR ORDER UNDER 11 U.S.C. §§327 AND 328(a) AUTHORIZING (A) THE RETENTION AND EMPLOYMENT OF (I) WILLIAM BLAIR & COMPANY, L.L.C. AS INVESTMENT BANKER AND (II) HILCO REAL ESTATE, LLC AS REAL ESTATE ADVISOR, AND (B) THE FILING OF CERTAIN DOCUMENTS UNDER SEAL**

Philip V. Martino, the duly appointed and serving Chapter 11 trustee ("Trustee") for the estates of Giordano's Enterprises, Inc. ("GEI"); Randolph Partners, LP; JBA Equipment Finance, Inc.; Altamonte Partners, LLC, and the other twenty-nine (29) above-captioned debtors (collectively, the "Debtors" or the "Company"), by his attorneys, hereby seeks the entry of an order, in the form submitted with this Application, authorizing the Trustee to retain and employ William Blair & Company, L.L.C. ("Blair") as investment banker and Hilco Real Estate, LLC ("Hilco") as real estate advisor, effective May 19, 2011, and authorizing certain documents ancillary to that retention to be filed under seal.  In support of this Application, the Trustee

---

[1] The Debtors in these cases are: Giordano's Enterprises, Inc., Illinois Management Company, Inc., JBA Equipment Finance, Inc., Altamonte Partners, LLC, Giordano's Franchise, Inc., Giordano's of Florida, Inc., Giordano's Restaurants, Inc., Giordano's Famous Stuffed Pizza, Inc., Americana Foods, Inc., Pizza Pizazze, Inc., Giordano's, LLC, Oakbrook Partners, LLC, Randolph Partners, LLC, Randolph Partners, LLC 20-24 Series, Randolph Partners, LLC – 327 Series, Randolph Partners, LLC – Lake Street Series, Randolph Partners, LLC – Formosa Series, Randolph Partners, LLC – Minooka Series, Randolph Partners, LP, Randolph Partners, LLC – 740 Series, Randolph Partners, LLC – 308 Series, Randolph Partners, LLC – Ogden Oswego Series, Randolph Partners, LLC – 1425 Series, Randolph Partners, LLC – Mount Prospect Series, Belmont Pizza, Inc., Rush Pizza, Inc., Greektown Pizza, Inc., Rosemont Pizza, Inc., Willowbrook Pizza, Inc., Randolph Partners, LLC – Sherberth Series, Randolph Partners, LLC – Oakbrook Partners Series, Randolph Partners, LLC – Cotton Lane Series, and Randolph Partners, LLC – Randall Orchard Series.

submits the Declaration of Geoffrey A. Richards, the head of the Special Situations and Restructuring Group at Blair (the "Richards Declaration"), and the Declaration of Joseph A. Malfitano, Vice President and Deputy General Counsel of Hilco Trading, LLC, the managing member of Hilco (the "Malfitano Declaration").  In further support, the Trustee states:

### Jurisdiction

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(a) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  The consideration of this Application is a core proceeding pursuant to 28 U.S.C. §157(b).  The statutory predicates for the relief requested herein are 11 U.S.C. §§ 327(a), 328(a), 1107(b) and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

### Background

2. On February 16, 2011 (the "Petition Date"), GEI and twenty-six (26) of the other Debtors filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code").  On February 17, 2011, the other six (6) Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors' cases are being jointly administered.

3. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors initially operated their businesses and managed their financial affairs as debtors in possession.

4. On March 7, 2011, the U.S. Trustee appointed a committee of unsecured creditors (the "Committee").

5.      On May 12, 2011, upon the motion of the United States Trustee, the Court appointed Philip V. Martino to be the Trustee for the Debtors, thereby taking the Debtors out of possession and placing their assets and businesses under the control of the Trustee.

6.      According to information provided to the Trustee, Giordano's operates six company owned stores in the Chicago area, four joint venture stores, and thirty-five franchisee locations. In addition, Giordano's operates Americana Foods, Inc., located in Mount Prospect, Illinois, that serves as the commissary for the majority of food products purchased by the Illinois locations. An affiliated real estate holding company, Randolph Partners, LP, owns twelve restaurant buildings that are leased to four of the company-owned locations, two of the joint venture locations and six of the franchisee locations. The other thirty-three locations are leased from third party landlords; two for the Giordano's locations, two for the joint venture locations and twenty-nine for the franchise locations. Giordano's is the lessee and subleases the restaurant facility for twenty-two of the twenty-nine franchise third party leases. JBA Equipment Finance, Inc, another affiliated entity, leases restaurant equipment packages to eight franchisee locations.

## DIP Financing and Sale Process

7.      On March 17, 2011, the Court entered a final order authorizing the Debtors to use the cash collateral of Fifth Third Bank ("Lender") and to obtain debtor in possession financing from Lender (Docket No. 103) (as amended from time to time, the "Final Cash Collateral/DIP Financing Order").

8.      The Final Cash Collateral/DIP Financing Order expressly requires that the Debtors effectuate a process for the sale of their assets on a going concern basis and, in connection therewith, retain an investment banker.

3

**Selection of William Blair & Company, L.L.C. and Hilco Real Estate, LLC**

9. Subsequent to the entry of the Final Cash Collateral/DIP Financing Order, but before the appointment of the Trustee, the Debtors and Lender, with the consultation of the Committee, interviewed several investment bankers, as well as real estate advisors.

10. Before the Trustee was appointed, the Debtors selected Blair to be their investment banker and Hilco to be their real estate advisor.

11. Upon his appointment, the Trustee immediately began evaluating the terms of the engagements agreed to by the former Debtors in possession and entered into further negotiation of the engagement terms for the benefit of these estates. The Trustee worked with the Lender, the Committee, the United States Trustee's Office, and Blair and Hilco.

**Relief Sought**

12. Section 327(a) of the Bankruptcy Code provides, in part, that the "trustee with the court's approval, may employ … professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. §327(a).

13. Code §328(a) provides, in relevant part (emphasis added):

> The trustee . . . , with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of [the Bankruptcy Code,] on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on *a fixed or percentage fee basis*, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

14. By this Application, the Trustee requests that the Court enter an order authorizing him to employ and retain, on behalf of Debtors and their estates, Blair as investment banker and

4

QB\13380002.4

Hilco as real estate advisor, pursuant to the terms and conditions in the engagement letter from Blair, dated May 19, 2011 (the "Blair Engagement Agreement") and the engagement letter from Hilco dated May 19, 2011 (the "Hilco Engagement Agreement", and collectively with the Blair Engagement Agreement, the "Engagement Agreements"), copies of which are attached hereto as Exhibit A and Exhibit B, respectively.

15. The Richards Declaration is attached hereto as Exhibit C, and the Malfitano Declaration is attached hereto as Exhibit D.

## Services to be Rendered

16. Pursuant to the terms of the Engagement Agreements, the Trustee shall retain Blair as investment banker and Hilco as real estate advisor to advise in connection with: (a) an M&A Transaction, and/or (b) a Lease Transaction.[2] Each of an M&A Transaction and a Lease Transaction is referred to as a "Possible Transaction" and they are collectively referred to as the "Possible Transactions".

      a. An "M&A Transaction" is defined as any transaction or series of transactions, whether accomplished pursuant to a confirmed Chapter 11 plan or otherwise, involving (a) an acquisition, merger, consolidation or other transaction with another party through which any assets of the Company are, directly or indirectly, combined with or transferred to another party outside the ordinary course of business; (b) the acquisition, directly or indirectly, by a buyer or buyers of equity interests or options, or any combination thereof constituting a majority or controlling portion of the stock of the Company or possessing a majority or controlling portion of the voting power of the Company; (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of a majority or controlling portion of the securities or other interests of the Company (through, merger, sale, exchange or otherwise); (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purposes of effecting a transfer of a majority or controlling interest in the Company to a third party; (e) a reorganization, a debt for equity conversion or similar transaction under Section 1129 of the Bankruptcy

---

[2] To the extent that the descriptions contained below in this Application conflict with the terms of the Engagement Agreements and the Fee Sharing Agreement, the terms of the Engagement Agreements and the Fee Sharing Agreement will control.

5

QB\13380002.4

    Code; or (f) any combination of the foregoing.  Notwithstanding the foregoing, an M&A Transaction shall exclude any sale or equity interests in the Company owned by nondebtors.

  b. A "<u>Lease Transaction</u>" is referred to as a transaction, at the Company's direction, regarding a real property lease of the Company providing for a rent reduction, term shortening, or non-economic modifications, or extensions or new leases on owned property.

17. Blair and Hilco will perform such of the following services in connection with a Possible Transaction as the Company may reasonably request:

  a. Familiarize themselves to the extent they deem appropriate with the business, operations, financial condition and prospects of the Company;

  b. Prepare an analysis of strategic alternatives and recommend the strategy intended to achieve the optimal outcome for the Company;

  c. Assist the Company's management in (i) developing (x) a strategy for pursuing a Possible Transaction involving the Company and (y) a list of possible participants in the Possible Transaction (it being understood that such participants may include parties to whom Blair has rendered or is now rendering investment banking services), (ii) preparing a descriptive memorandum that describes the Company's operations and financial condition and includes current financial data and other appropriate information furnished by the Company (as amended and supplemented from time to time, the "<u>Descriptive Memorandum</u>") and (iii) contacting and eliciting interest from, and conducting financial due diligence on, those possible participants expressly previously approved by the Company;

  d. Participate with the Company and its counsel, as requested by the Company, in (i) the investigatory and "due diligence" review being conducted by any possible participant (as approved by the Company) and (ii) evaluating, structuring and negotiating the terms and conditions of any proposed Possible Transaction, whether in connection with a confirmed chapter 11 plan (a "<u>Plan</u>") or otherwise;

  e. Report to and participate in discussions with the Company's trustee (such participation to be in person or by telephone, as appropriate) concerning each Possible Transaction;

  f. Together with the Company, prepare for and participate in meetings with the Company's existing lenders, creditor groups, official constituencies and other interested parties, as necessary;

6

QB\13380002.4

    g.    Participate in hearings before the Bankruptcy Court (the "Bankruptcy Court") in which the Company commenced its cases under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and provide relevant testimony with respect to the matters described herein and arising in connection with any Possible Transaction or any proposed Plan;

    h.    Use their commercially reasonable efforts to facilitate individual sales of real property parcels, as reasonably requested by the Company; and

    i.    Provide such other or further services as Blair and the Company agree in writing.

### Indemnification

18. Blair and the Trustee have entered into a separate indemnity agreement (the "Blair Indemnity Agreement") the terms of which shall be incorporated into the Blair Engagement Agreement. A copy of the Indemnity Agreement is attached hereto as Exhibit E.

19. The Blair Indemnity Agreement provides that the Company will indemnify Blair (and other parties) against any Losses and Expenses (as defined in the Indemnity Agreement) relating to the services rendered by Blair to the Company, other than as a result of gross negligence or bad faith of Blair.

20. Blair has agreed to the following modifications of the Blair Indemnity Agreement to be set forth in the order approving the engagement of Blair (the "Engagement Order"):

    (a)    Blair shall not be entitled to indemnification, contribution, or reimbursement for services other than the services provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefore are approved by this Court;

    (b)    Notwithstanding anything to the contrary in the Engagement Letter, the Debtors' estates shall have no obligation to indemnify any person for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen primarily from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors' estates allege the breach of Blair's contractual obligations unless this Court determines that indemnification, contribution, or reimbursement would be

7

       permissible pursuant to *In re United Artist Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order; and

    (c)    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Blair believes that it is entitled to payment of any amounts from the Debtors' estates on account of the indemnification, contribution, or reimbursement obligations of the Debtors' estates under the Blair Engagement Letter, including without limitation the advancement of defense costs, Blair must file an application before this Court, and the Debtors may not pay any such amounts to Blair before the entry of an order by this Court approving the payment. This paragraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for payment by Blair for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the obligation of the Debtors' estates to indemnify Blair.

    21.    The Debtors and Blair believe that the indemnification provisions of the Blair Engagement Agreement and the Blair Indemnity Agreement, as modified by the Engagement Order, are customary and reasonable for investment banking engagements, both in chapter 11 cases and out-of-court, and are similar to the terms that have been approved in other cases in this district. *See, e.g., In re Jernberg Indus., Inc.,* No. 05-25909 (JHS) (Bankr. N.D. Ill. July 21, 2005 [Dkt. 233]); *In re Kimball Hill, Inc.,* No. 08-10095 (SPS) (Bankr. N.D. Ill. May 28, 2008 [Dkt. 241]); *In re Hartmarx Corp.,* No. 09-02046 (BWB) (Bankr. N.D. Ill. Mar. 4, 2009 [Dkt. 184]); *In re Olde Prairie Block Owner, LLC,* No. 10-22668 (JBS) (Bank. N.D. Ill. Nov. 29, 2010 [Dkt. 379]); *In re Fairview Ministries, Inc.,* No. 11-04386 (SPS) (Bankr. N.D. Ill. March 15, 2011 [Dkt. 150])

    22.    Under the Hilco Engagement Agreement, the Debtors and Hilco shall indemnify each other as follows:

8

QB\13380002.4

      (a)    Hilco shall indemnify and hold the Company, and its respective officers, directors, managers, general partners, employees, consultants, and independent contractors harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

      (i)    Hilco's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith; or

      (ii)    the negligence, willful misconduct or unlawful acts of Hilco, its affiliates or their respective officers, directors, employees, consultants, independent contractors or representatives.

      (b)    The Company shall indemnify and hold Hilco, and its respective officers, directors, managers, general partners, employees, consultants, and independent contractors harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

      (i)    The Company's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith; or

      (ii)    the negligence, willful misconduct or unlawful acts of the Company, its affiliates or their respective officers, directors, employees, consultants, independent contractors or representatives.

### Compensation and Reimbursement for Expenses

23.    As consideration for the services to be provided by Blair and Hilco, the Company shall pay the fees set forth in the Blair Engagement Agreement. Blair and Hilco have agreed to share those fees in accordance with the Fee Sharing Agreement attached to the Hilco Engagement Agreement as Exhibit A:

      a.    **Monthly Fee**. A monthly fee in the amount of $75,000 due, earned and payable in advance in full, commencing as of May 19, 2011 and every thirty days thereafter (the "Monthly Retainer Fees"), until the termination of Blair's engagement. All of the Monthly Retainer Fees shall be credited against the Break Fee and the M&A Fee.

9

      b.    **M&A Transaction**. Upon the consummation of an M&A Transaction (or, if applicable, upon consummation of each M&A Transaction), Blair shall be paid a fee (the "M&A Fee") described in this subsection (b). The M&A Fee shall be calculated by multiplying the applicable fee percentage by the total Aggregate Consideration in such M&A Transaction as set forth below:

| Incremental Aggregate Consideration (in millions) | Fee |
|---|---|
| $0 up to but not including $25 | 0.00% of Aggregate Consideration in such range |
| $25 | 1.50% of Aggregate Consideration |
| More than $25, up to but not including $35 | 3.00% of Aggregate Consideration in such range |
| $35 up to but not including $45 | 3.50% of Aggregate Consideration in such range |
| $45 up to but not including $55 | 5.50% of Aggregate Consideration in such range |
| $55 and above | 6.00% of Aggregate Consideration in such range. |

      c.    **Lease Transaction.** Upon the consummation of any of the following transactions at the Company's direction (each, a "Lease Transaction"), the Company shall pay a fee according to the following schedule, without duplication:

          i. Rent Reductions: 5% of any lease savings achieved with respect to any leases successfully renegotiated;

          ii. Term Shortening: 1.75% of the gross lease savings secured over any shortened term;

          iii. Non-Economic Modifications: $1,500 per lease;

          iv. Other: a fee equal to the greater of (i) $10,000 or (ii) 3% of the projected base rent payable over the term of a lease extension new lease executed on an owned property.

      d.    **Process Break**. Upon a voluntary termination of Blair's engagement by the Company in writing (which, solely for purposes of this paragraph, will be without the need for 10 days or any other prior written notice), the Company shall pay to Blair a fee (the "Break Fee") with respect to any Secured Debt Transaction[3] in an amount less than the fees that would otherwise be payable under the Engagement Agreement, and as to the extent agreed to in writing between Blair and the Company on the date hereof. The Break Fee is payable as a carveout to Blair pursuant to the

---

[3] A Secured Debt Transaction means sale of all or substantially all of the Aggregate Debt (as defined in the existing DIP financing order).

10

QB\13380002.4

        Amended Debtor in Possession Financing Order to be filed concurrently with the application to retain Blair.

Notwithstanding the foregoing, if the Engagement Agreement is terminated pursuant to paragraph (d) immediately above, in addition to the applicable Break Fee, Blair shall be paid a separate fee solely in connection with the sale of agreed upon parcels of real estate based upon the following schedule:

| Aggregate Consideration (in millions) | Fee |
|---|---|
| $0 to $5 | 4.00% of Aggregate Consideration |
| $5 to $10 | 3.00% of Aggregate Consideration |
| $10 and above | 2.00% of Aggregate Consideration |

In order to qualify for the above real estate fee, however, Blair must be in advanced discussions/negotiations with a potential purchaser of real property at the time the Company voluntarily terminates the engagement (e.g. negotiating or previously executed a purchase and sale agreement, negotiating or previously executed a letter of intent or general "meeting of the minds" exists between a potential purchaser and the Company) and such transaction(s) closes within six (6) months therefrom. If the Company elects not to close on the sale of real property, no additional fee shall be due in connection therewith.

Separately, to the extent the Company wishes to have Blair assist with closing any real property transaction, Blair agrees to actively participate and use its reasonable best efforts in facilitating said transaction. If the Company does not wish to have Blair involved in effectuating the closing, Blair shall continue to be entitled to its full real estate fee pursuant to the above schedule.

For purposes hereof: the term "<u>Aggregate Consideration</u>" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid in connection with the M&A Transaction, including amounts paid in respect of, if any, convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) all liabilities assumed by the third party plus (z) in the context of a confirmed Chapter 11 plan and without duplication of any of the foregoing items, the enterprise value of the reorganized entity(ies), as agreed to by the Company and Blair or as otherwise determined by the Bankruptcy Court, in addition to cash on the Company's balance sheet on the confirmation hearing date. If the Aggregate Consideration is subject to increase by contingent payments related to future events or the distribution of any escrow, holdback or other retention of consideration, the portion of Blair's fee relating thereto shall be paid to Blair if and when such consideration is released from escrow or otherwise paid to the Company.

> The fee payable to Blair upon consummation of a Possible Transaction will be payable in cash upon the consummation of a Possible Transaction and thereafter, as described in the preceding paragraph, pursuant to the entry of a Bankruptcy Court Order approving such Possible Transaction. The maximum aggregate M&A Fee payable to Blair (the "Fee Cap") is (a) $1,300,000 until the Secured Lender's Aggregate Debt (as defined in the DIP financing order) has been satisfied or paid in full in cash (unless the Secured Lender otherwise consents in writing to the payment of a fee in an amount in excess of the Fee Cap) and (b) $2,175,000 once the Secured Lender's Aggregate Debt has been satisfied or paid in full in cash.

24. Similar fixed and percentage fee arrangements have been approved by this Court in other chapter 11 cases. *See, e.g.*, *In re Jernberg Indus., Inc.,* No. 05-25909 (JHS) (Bankr. N.D. Ill. July 21, 2005 [Dkt. 233]); *In re Kimball Hill, Inc.,* No. 08-10095 (SPS) (Bankr. N.D. Ill. May 28, 2008 [Dkt. 241]); *In re Hartmarx Corp.,* No. 09-02046 (BWB) (Bankr. N.D. Ill. Mar. 4, 2009 [Dkt. 184]); *In re SK Hand Tool Corp.,* No. 10-28882 (ERW) (Bankr. N.D. Ill. July 20, 2010 [Dkt. 68]); *In re Olde Prairie Block Owner, LLC,* No. 10-22668 (JBS) (Bankr. N.D. Ill. Nov. 29, 2010 [Dkt. 379]); *In re Fairview Ministries, Inc.,* No. 11-04386 (SPS) (Bankr. N.D. Ill. March 15, 2011 [Dkt. 150]).

25. The Company will reimburse Blair and Hilco for all reasonable and documented out-of-pocket expenses (including reasonable fees and expenses of their respective outside counsel) reasonably incurred by each in connection with their engagement hereunder up to an aggregate of $25,000 without the consent of the Company and the Secured Lender. Blair and Hilco shall receive the prior consent of the Company and the Secured Lender (which shall not be unreasonably withheld) before incurring aggregate expenses in excess of $25,000. Such reimbursement will be payable promptly upon submission by Blair and Hilco of written statements to the Company, expected to occur monthly.

26. The fees and expenses of Blair and Hilco shall be paid by the Debtors in the amounts, at the times and in the manner described in the Engagement Agreements and the Fee

12

Sharing Arrangement, subject to the terms and conditions set forth in the Final Cash Collateral/Financing Order (as may be amended from time to time).

27.     The Trustee is satisfied that the overall compensation structure described herein is comparable to compensation generally charged by investment bankers and real estate advisors of similar stature and experience for comparable engagements, both in and out of bankruptcy court. Blair's and Hilco's respective industry and restructuring expertise, knowledge of capital markets, and financing skills and capabilities in the areas of mergers and acquisitions and of real estate transactions were important factors in determining the compensation structure.

28.     Because of Blair's and Hilco's respective expertise, commitment of resources to this engagement to the exclusion of other possible employment, and the time that Blair will likely devote to this engagement, the Trustee asks that the Court approve the compensation structure described herein for Blair and for Hilco under Bankruptcy Code §328(a) and that the Court evaluate the final compensation and reimbursement of expenses in these cases for Blair and Hilco under the standards of Bankruptcy Code §328(a), rather than under those of Bankruptcy Code §330.

29.     Blair and Hilco have represented to the Trustee that they will each file a final fee application in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules of this Court, and pursuant to any additional procedures that have been or may be established by the Court in this case.  Blair and Hilco have agreed that neither will seek compensation or reimbursement of expenses from the Debtors' estates in excess of amounts ultimately allowed by the Court under Bankruptcy Code §328(a).  Blair and Hilco desire, however, to be excused from maintaining detailed time records, required by Rule 2016 of the Bankruptcy Rules and Local Rule 5082-1, in connection with the services rendered pursuant to

13

QB\13380002.4

the Engagement Agreements. Rather, Blair and Hilco request that they be permitted to present reasonably detailed descriptions of those services provided on behalf of the Debtors and the individuals who provided professional services on behalf of the Debtors.

30. Except as set forth in Mr. Richards' Declaration, Blair has not shared or agreed to share any of its compensation from the Debtors with any persons, other than employees of Blair, as permitted by Section 504 of the Bankruptcy Code.

31. Other than with Blair, Hilco has advised the Debtors that it has not shared or agreed to share any of its compensation under the Engagement Agreements and the Fee Sharing Agreement with any persons, other than employees of Hilco, as permitted by Section 504 of the Bankruptcy Code.

**Process Break Fee Agreement and Request to File Certain Documents Under Seal**

32. The parties have negotiated a "process break fee" to insure a reasonable payment to Blair and Hilco in the event of a Secured Debt Transaction (as defined in the Blair Engagement Letter, §2(d)), which could result in a break in the sale process contemplated by the Blair and Hilco Engagement Letters. In accordance with section 2(d) of the Blair Engagement Agreement, Blair and the Trustee have entered into a written agreement (the "<u>Break Fee Agreement</u>") regarding the Break Fee.

33. Blair, Hilco, Lender, and the Trustee have also entered into a certain Consent agreement, by which the Lender consents to the terms of the Engagement Letters and to the payment of the amounts described therein, and provides assurances to Blair and Hilco regarding the payment of amounts owed to them from the Lender's collateral. The Consent incorporates the terms of the Break Fee Agreement.

14

QB\13380002.4

34. Bankruptcy Code §107(b)(1) authorizes the Court to "protect an entity with respect to a trade secret or confidential research, development, or commercial information." Fed. R. Bankr. P. 9018, in turn, provides, in relevant part, that:

> [o]n motion or on its own initiative, with or without notice, the court may make any order which justice requires ... to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information. . . .

35. The Trustee has come to learn that the markets are aware of the coming availability of the Debtors' assets. The Break Fee Agreement contains sensitive commercial information regarding potential offerors who might enter into a Secured Debt Transaction. The Trustee, Blair, the Lender, and (upon information and belief) the Committee share the concern that revealing such information publicly, and outside a formal, structured bidding process, could have a detrimental affect on that process, in part, by encouraging collusion among interested parties.

36. Moreover, this aspect of the Blair Engagement Letter has been carefully crafted for the specific circumstances of this engagement, and Blair legitimately believes it could be harmed in its competitive posture by allowing the Break Fee Agreement to become public.

37. The Trustee therefore requests that the Court include in its order granting this application, authority for the Trustee to file the Break Fee Agreement and the Consent (which includes information from the Break Fee Agreement) under seal as Group Exhibit E to that order.

### Right of Termination

38. The Trustee's engagement of Blair and Hilco (together, the "Professionals") may be terminated, with or without cause, by the Company or the Professionals upon 10 days prior written notice to the other; provided, however, that (a) no such termination will affect the Professionals' respective rights to (i) expense reimbursement under section 3 of the Blair

15

QB\13380002.4

Engagement Agreement for expenses incurred through the effective date of termination, (ii) the payment of any accrued and unpaid fees pursuant to section 2 of the Blair Engagement Agreement, or (iii) the indemnification contemplated by section 3 of the Hilco Engagement Agreement, and section 4 of the Blair Engagement Agreement or the Indemnity Agreement and (b) except for a Secured Debt Transaction which shall be governed by section 2(d) of the Blair Engagement Agreement and unless such engagement shall have been terminated by the Professionals without cause or by the Trustee with cause if the Company, or any affiliate of the Company, directly or indirectly executes a definitive agreement related to a Possible Transaction within 12 months following such termination with any party, person or entity, then the Professionals will be entitled to the fee contemplated by section 2 of the Blair Engagement Agreement, which shall be paid as set forth in such section 2.

## Disinterestedness

39. To the best of the Trustee's knowledge, based upon and except as set forth in the. Richards Declaration:

    a.    Blair does not hold or represent any interest adverse to the Debtors' chapter 11 estates; and

    b.    Blair is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code. Specifically,

        (1)    Blair is not a creditor, an equity security holder, or an insider of the Debtors.

        (2)    Blair is not and was not, within 2 years before the Petition Date, a director, officer, or employee of the Debtors.

        (3)    Blair does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

40. To the best of the Trustee's knowledge, Blair does not have any connections with the Debtors, their creditors, any other parties in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee, except as set forth in the Richards Declaration.

41. To the best of the Trustee's knowledge, based upon and except as set forth in the Malfitano Declaration:

  a. Hilco does not hold or represent any interest adverse to the Debtors' chapter 11 estates; and

  b. Hilco is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code. Specifically,

    (1) Hilco is not a creditor, an equity security holder, or an insider of the Debtors.

    (2) Hilco is not and was not, within 2 years before the Petition Date, a director, officer, or employee of the Debtors.

    (3) Hilco does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

42. To the best of the Trustee's knowledge, Hilco does not have any connections with the Debtors, their creditors, any other parties in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee, except as set forth in the Malfitano Declaration.

**Retention of Blair and Hilco in Best Interests of Debtors' Estates**

43. The Trustee respectfully states that the retention of Blair and Hilco on the terms and conditions set forth in the Engagement Agreements is necessary and appropriate and is in the best interests of the Debtors' estates.

17

QB\13380002.4

## **NOTICE**

44. This Application has been filed electronically, and notice thereof will be provided electronically, via the Court's CM/ECF System, to (a) counsel for (i) Fifth Third Bank; (ii) the Committee; and (iii) the United States Trustee; and (b) entities, or their counsel, who have filed a notice of appearance through the Court's CM/ECF System. The Trustee asks the Court to find that such notice is sufficient and to approve the same under Fed. R. Bankr. P. 9006(c)(1) and 9007.

WHEREFORE, Philip V. Martino, Chapter 11 Trustee, respectfully requests that this Court enter the attached order (i) authorizing the Trustee to retain and employ Blair as investment banker and Hilco as real estate advisor, effective May 19, 2011; (ii) authorizing the Trustee to file Group Exhibit E under seal, and (iii) granting such other relief as this Court may deem just and proper.

Dated: May 20, 2011

PHILIP V. MARTINO, not individually, but solely as Chapter 11 Trustee for Giordano's Enterprises, Inc., *et al.*

By: ___/s/ Christopher Combest_____
       One of his Proposed Attorneys

Christopher Combest
Quarles & Brady LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
Telephone: (312) 715-5000
Facsimile: (312) 632-1727
christopher.combest@quarles.com

18

QB\13380002.4