UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re | ) | Chapter 11 |
| | ) | |
| GIORDANO'S ENTERPRISES, INC., *et al* | ) ) ) | Case No. 11-06098 (Jointly Administered) |
| | ) | |
| Debtors. | ) ) ) ) | Hon. Eugene R. Wedoff |

THIRD ORDER APPROVING FOURTH AMENDMENT
TO DEBTOR-IN-POSSESSION LOAN AGREEMENT AND AMENDING
FINAL CASH COLLATERAL/DEBTOR IN POSSESSION FINANCING ORDER

This matter coming on to be heard on the motion (the "Motion") of Philip V. Martino, the duly appointed and serving Chapter 11 trustee (the "Trustee") for the estates of Giordano's Enterprises, Inc., and the other thirty-two (32) above captioned debtors (collectively, the "Debtors") requesting that this Court enter an order: (1) approving that certain Fourth Amendment to Debtor-In-Possession Loan Agreement dated November 2, 2011, and (2) amending the Order Authorizing Debtors to: (A) Use Cash Collateral; (B) Incur Postpetition Debt; and (C) Grant Adequate Protection and Provide Other Relief To Fifth Third Bank (Docket No. 103) (as amended by that certain Order Approving Amendments to Debtor-In-Possession Loan Agreement and Amending Final Cash Collateral Order/Debtor-In-Possession Financing Order, entered on May 27, 2011 at Docket No. 378, and that certain Second Order Approving Amendments to Debtor-In-Possession Loan Agreement and Amending Final Cash Collateral/Debtor-In-Possession Financing Order, entered on August 16, 2011 at Docket No.

621, the "Final Cash Collateral/DIP Financing Order[1]"); notice of the Motion being sufficient under the circumstances; the Court having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing on the Motion; and objections, if any, having been withdrawn, resolved or overruled by the Court;

**THE MOTION IS GRANTED AND IT IS HEREBY ORDERED THAT:**

1.  The Fourth Amendment to Debtor-In-Possession Loan Agreement dated November 2, 2011, a copy of which is attached hereto as Exhibit A, is hereby approved in its entirety.

2.  Paragraph 3(c)(vii) of the Final Cash Collateral/DIP Financing Order is hereby amended to add the following clause to the end thereof:

> "In addition to the foregoing, Debtors shall pay to Postpetition Lender an additional amendment fee in consideration for Lender's agreement to amend the Postpetition Credit Agreement as set forth in that certain Fourth Amendment to Debtor-In-Possession Loan Agreement dated as of November 2, 2011 (the "Fourth Amendment"), in an amount equal to $150,000 (the "Fourth Amendment Fee"), which shall be fully earned and non-refundable upon the entry of this Order and, together with the Amendment Fee, shall be payable upon the Termination Date as a Postpetition Charge."

3.  The last sentence of Paragraph 6(a) of the Final Cash Collateral/DIP Financing Order is hereby amended to add the following clause to the end thereof:

> "Notwithstanding the foregoing, in addition the amounts set forth in the Budget (and in the previous budgets deemed amended hereby), the Carveout amount for the Committee's Carveout Professionals shall be increased by an additional $50,000 after all Aggregate Debt (including non-default interest and all Postpetition Charges), other than the incremental default rate of interest, has been paid in full in cash."

4.  The last sentence of Paragraph 6(b) of the Final Cash Collateral/DIP Financing Order is hereby amended to add the following clause to the end thereof:

> "provided, further, however, that the previously budgeted amounts for the Carveout for the Committee shall be deemed to be increased for the Committee $100,000, for the period from the retention of Committee Professionals through the Termination Date."

5.  Paragraph 10(c) – (h) of the Final Cash Collateral/DIP Financing Order is hereby amended and restated in its entirety as follows:

---

[1] All capitalized terms not otherwise defined in this Order shall have the meaning set forth in the Final Cash Collateral/DIP Financing Order.

-2-

"(c) <u>Bidding Procedures and Sale Motion</u>. On or before October 25, 2011, Borrowers shall file one or more motions or a joint plan of reorganization with the Bankruptcy Court seeking approval of the Sale in accordance with a form of asset purchase agreement acceptable to DIP Lender, seeking approval to appoint the stalking horse bidder, and seeking approval of bidding procedures acceptable to DIP Lender.

(d) <u>Competing Bids</u>. On or before November 10, 2011, Borrowers shall have delivered to DIP Lender one or more competing bids from prospective purchasers regarding the Sale, in form and substance acceptable to the DIP Lender.

(e) <u>Bid Qualification</u>. On or before November 14, 2011, Borrowers shall have delivered to Lenders one or more qualifying competing bids from prospective purchasers regarding the Sale, in form and substance acceptable to Lenders.

(f) <u>Auction</u>. On November 15, 2011, Borrowers shall conduct one or more auctions for the sale of all or substantially all of the Borrowers' assets.

(g) <u>Sale Order</u>. On or before November 18, 2011, Borrowers shall obtain one or more orders of the Bankruptcy Court approving the sale of all or substantially all of the Borrowers' assets, which sale order shall be in form and substance acceptable to DIP Lender.

(h) <u>Sale Closing</u>. On or before December 9, 2011, Borrowers shall consummate one or more sales of substantially all of the Borrowers' assets, on terms and conditions satisfactory to DIP Lender."

6. Clause (d) of the definition of "Termination Date" set forth on Exhibit A to the Final Cash Collateral/DIP Financing Order is hereby amended by replacing the reference to "November 4, 2011" with "December 23, 2011".

7. The Budget attached at Exhibit B to the Final Cash Collateral/DIP Financing Order is hereby replaced with the revised Budget attached hereto at <u>Exhibit B</u>.

8. Based upon the stipulation among the DIP Lender, the Trustee and the Committee, to the extent of the value of the Aggregate Collateral, the Committee has waived (and the Trustee, to the extent not previously barred, has waived) any objection to DIP Lender's claims for (a) accrued and accruing interest on the Aggregate Debt at the default rate of interest, (b) the Amendment Fee and the Fourth Amendment Fee, and (c) for all other Postpetition Charges incurred or otherwise accrued prior to October 1, 2011. Based upon the stipulation of the Committee, the Committee further waives and agrees to not assert any and all previously reserved Challenges.

9. Except as expressly set forth herein, the terms of the Final Cash Collateral/DIP Financing Order are not altered and remain in full force and effect.

10. The terms of this Order were negotiated in good faith and at arm's length, and the Postpetition Debt (as amended hereby) has been extended in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and the Postpetition Debt (as amended hereby) is entitled to the protections of Section 364(e) of the Bankruptcy Code.

DATED: November 2, 2011

_____
United States Bankruptcy Judge

# EXHIBIT A

**Fourth Amendment to Debtor-in-Possession Loan Agreement**

# FOURTH AMENDMENT TO DEBTOR-IN-POSSESSION LOAN AGREEMENT

This FOURTH AMENDMENT TO DEBTOR-IN-POSSESSION LOAN AGREEMENT dated as of November 2, 2011 (this "Amendment") is by and among each of the following Debtors, GIORDANO'S ENTERPRISES, INC., an Illinois corporation ("GEI"), GIORDANO'S FRANCHISE, INC., an Illinois corporation ("Franchise"), GIORDANO'S OF FLORIDA, INC., an Illinois corporation ("GFI"), GIORDANO'S RESTAURANTS, INC., an Illinois corporation ("GRI"), GIORDANO'S FAMOUS STUFFED PIZZA, INC., an Illinois corporation ("GFSP"), AMERICANA FOODS, INC., an Illinois corporation ("AFI"), PIZZA PIZAZZE, INC., an Illinois corporation ("PPI"), GIORDANO'S, LLC, a Delaware limited liability company ("GEI LLC"), JBA EQUIPMENT FINANCE, INC., an Illinois corporation ("JBA"), OAKBROOK PARTNERS, LLC, an Illinois limited liability company ("Oakbrook"), RANDOLPH PARTNERS, LLC 20-24 SERIES, a series of a Delaware limited liability company ("RP20-24"), RANDOLPH PARTNERS, LLC - 327 SERIES, a series of a Delaware limited liability company ("RP327"), RANDOLPH PARTNERS, LLC – LAKE STREET SERIES, a series of a Delaware limited liability company ("RP Lake Street"), RANDOLPH PARTNERS, LLC – FORMOSA SERIES, a series of a Delaware limited liability company ("RP Formosa"), RANDOLPH PARTNERS, LLC – MINOOKA SERIES, a series of a Delaware limited liability company ("RP Minooka"), RANDOLPH PARTNERS, LP, a Delaware limited partnership ("RPLP"), RANDOLPH PARTNERS, LLC – 740 SERIES, a series of a Delaware limited liability company ("RP740"), RANDOLPH PARTNERS, LLC – 308 SERIES, a series of a Delaware limited liability company ("RP308"), RANDOLPH PARTNERS, LLC, a Delaware limited liability company ("RP LLC"), RANDOLPH PARTNERS, LLC – OGDEN OSWEGO SERIES, a series of a Delaware limited liability company ("RP Ogden Oswego"), RANDOLPH PARTNERS, LLC –1425 SERIES, a series of a Delaware limited liability company ("RP 1425"), RANDOLPH PARTNERS, LLC – MOUNT PROSPECT SERIES, a series of a Delaware limited liability company ("RP Mt. Prospect"), BELMONT PIZZA, INC., an Illinois corporation ("Belmont Pizza"), RUSH PIZZA, INC., an Illinois corporation ("Rush Pizza"), GREEKTOWN PIZZA, INC., an Illinois corporation ("Greektown Pizza"), ROSEMONT PIZZA, INC., an Illinois corporation ("Rosemont Pizza"), WILLOWBROOK PIZZA, INC., an Illinois corporation ("Willowbrook Pizza"), RANDOLPH PARTNERS, LLC – SHERBERTH SERIES, a series of a Delaware limited liability company ("RP Sherberth"), ILLINOIS MANAGEMENT COMPANY, INC., an Illinois corporation ("IMC"), RANDOLPH PARTNERS, LLC – OAKBROOK PARTNERS SERIES, a series of a Delaware limited liability company ("RP Oakbrook"), RANDOLPH PARTNERS, LLC – COTTON LANE SERIES, a series of a Delaware limited liability company ("RP Cotton Lane"), ALTAMONTE PARTNERS, LLC, a Florida limited liability company ("Altamonte"), RANDOLPH PARTNERS, LLC – RANDALL ORCHARD SERIES, a series of a Delaware limited liability company, ("RP Randall Orchard"), each a Chapter 11 debtor (RP Randall Orchard, together with GEI, Franchise, GFI, GRI, GFSP, AFI, PPI, GEI LLC, JBA, Oakbrook, RP20-24, RP327, RP Lake Street, RP Formosa, RP Minooka, RPLP, RP740, RP308, RP LLC, RP Ogden Oswego, RP 1425, RP Mt. Prospect, Belmont Pizza, Rush Pizza, Greektown Pizza, Rosemont, Pizza, Willowbrook Pizza, RP Sherberth, IMC, RP Oakbrook, RP Cotton Lane and Alamonte collectively, "Borrowers" or "Debtors" and each a "Borrower" or "Debtor"), by and through Philip V. Martino, the duly appointed and serving Chapter 11 trustee ("Trustee") for the estates of the Debtors; and FIFTH THIRD BANK, an Ohio

banking corporation, as successor by merger with Fifth Third Bank, a Michigan banking corporation ("DIP Lender").

## RECITALS:

WHEREAS, the Borrowers and the DIP Lender are party to that certain Debtor-in-Possession Loan Agreement, dated as of February 22, 2011 (as amended, restated or otherwise modified from time to time, including, without limitation, pursuant to that certain First Amendment to Debtor-in-Possession Loan Agreement dated March 15, 2011, that certain Second Amendment to Debtor-in-Possession Loan Agreement dated May 25, 2011, and that certain Third Amendment to Debtor-in-Possession Loan Agreement dated August 16, 2011, the "DIP Loan Agreement"; capitalized terms used herein shall have the respective meanings ascribed thereto in the DIP Loan Agreement unless otherwise defined herein);

WHEREAS, (i) Events of Default set forth in that certain Notice of Events of Default and Reservation of Rights Letter dated May 18, 2011 have occurred and are continuing, (ii) Events of Default as a result of Borrowers' failure to comply with certain of the Sale Covenants set forth on Schedule 3.1(x) of the DIP Loan Agreement have occurred and are continuing, and (iii) Events of Default as a result of Borrowers' failure to comply with the covenants set forth in Sections 3.1(c)(i), 3.1(w)(i), 3.1(w)(iii), and 3.1(w)(v), respectively, have occurred and are continuing (the Events of Default referred to in clauses (i)-(iii), collectively the "Existing Defaults");

WHEREAS, Borrowers have requested that DIP Lender forbear from exercising its rights and remedies solely with respect to the Existing Defaults and solely for the period and on the terms and conditions set forth herein; and

WHEREAS, Borrowers and DIP Lender have agreed to amend the DIP Loan Agreement in certain respects and subject the terms and conditions specified herein.

NOW, THEREFORE, in consideration of the foregoing, and the respective agreements, warranties and covenants contained herein, the parties hereto agree as follows:

## SECTION 1. AMENDMENTS

In reliance on the representations set forth in Section 2 below and subject to the satisfaction of the conditions set forth in Section 3 below, the DIP Loan Agreement is amended as follows:

1.1. The definition of "Final Maturity Date" set forth in Section 7.1 of the DIP Loan Agreement is hereby amended by replacing "November 4, 2011" with "December 23, 2011".

1.2. The Sale Covenants set forth on Schedule 3.1(x) of the DIP Loan Agreement are hereby amended and restated as follows:

> a. on or before October 25, 2011, Borrowers shall file one or more motions or a joint plan of reorganization with the Bankruptcy Court

-2-

seeking approval of the Sale in accordance with a form of asset purchase agreement acceptable to DIP Lender, seeking approval to appoint the stalking horse bidder, and seeking approval of bidding procedures acceptable to DIP Lender;

b.      on or before November 10, 2011, Borrowers shall have delivered to DIP Lender one or more competing bids from prospective purchasers regarding the Sale, in form and substance acceptable to DIP Lender;

c.      on or before November 14, 2011, Borrowers shall have delivered to DIP Lender one or more qualifying competing bids from prospective purchasers regarding the Sale, in form and substance acceptable to DIP Lender;

d.      on November 15, 2011, Borrowers shall conduct one or more auctions for the sale of all or substantially all of the Borrowers' assets;

e.      on or before November 18, 2011, Borrowers shall obtain one or more orders of the Bankruptcy Court approving the sale of all or substantially all of the Borrowers' assets, which sale order shall be in form and substance acceptable to DIP Lender; and

f.      on or before December 9, 2011, Borrowers shall consummate one or more sales of substantially all of the Borrowers' assets, on terms and conditions satisfactory to DIP Lender.

**SECTION 2. REPRESENTATIONS AND WARRANTIES**

Each Borrower hereby represents, warrants and covenants as follows:

2.1.    **Representations in the DIP Loan Agreement and the Related Documents.** Each of the representations and warranties made by or on behalf of each Borrower to the DIP Lender in the DIP Loan Agreement or any of the Related Documents was true and correct when made, and is true and correct on and as of the date of this Amendment with the same full force and effect as if each of such representations and warranties had been made by each Borrower on the date hereof and in this Amendment. For the avoidance of doubt, the Trustee shall have no personal liability for any unintentional breach of any such representations and warranties, but the DIP Lender shall have all rights and remedies against each Borrower, including the right to terminate its agreement to forbear (as set forth below), in the event of the breach of any representation, warranty or covenant set forth in the DIP Loan Agreement.

2.2.    **Binding Effect of Documents.** This Amendment has been duly authorized, executed and delivered to the DIP Lender by each Borrower, by and through the Trustee, and subject to approval by the Bankruptcy Court, is enforceable in accordance with its terms and is in full force and effect.

2.3. **No Conflict.** The execution, delivery and performance of this Amendment by each Borrower will not violate any requirement of law or contractual obligation of any Borrower and will not result in, or require, the creation or imposition of any lien on any of their respective properties or revenues.

## SECTION 3. CONDITIONS TO EFFECTIVENESS OF CERTAIN PROVISIONS OF THIS AMENDMENT

Unless waived in writing by DIP Lender, the effectiveness of the terms and provisions of this Amendment shall be subject to the following conditions precedent, each in form and substance satisfactory to the DIP Lender:

(i) the receipt by the DIP Lender of an original of this Amendment, duly authorized, executed and delivered by each Borrower;

(ii) entry of an order by the Bankruptcy Court approving (1) this Amendment, and (2) certain corresponding modifications to the Final Financing Order, which order shall be in form and substance acceptable to DIP Lender and shall have become a final order;

(iii) Borrowers and Guarantors shall have executed and/or delivered, as applicable, to DIP Lender any approvals, documents and materials or such other documents that DIP Lender may request, each case in form and substance satisfactory to DIP Lender; and

(iv) all proceedings taken in connection with the transactions contemplated by this Amendment and all documents, instruments and other legal matters incident thereto shall be satisfactory to the DIP Lender and its legal counsel.

## SECTION 4. MISCELLANEOUS

4.1. **Amendment Fee.** Borrowers shall pay to DIP Lender an amendment fee in consideration for Lender's agreement to amend the DIP Loan Agreement and to forbear with respect to the Existing Defaults as set forth herein, in an amount equal to $150,000 (the "Fourth Amendment Fee"). Borrowers acknowledge and agree that the Fourth Amendment Fee (i) shall be fully earned and non-refundable upon the execution of this Amendment, (ii) shall be payable upon the Termination Date (as defined in the Final Financing Order), and (iii) shall be in addition to the Indebtedness.

4.2. **Forbearance.** Notwithstanding the occurrence of the Existing Defaults, DIP Lender agrees to forbear from exercising its rights and remedies against the Debtors as a result of such Existing Defaults, so long as no additional Event of Default occurs or has occurred.

4.3. **Continuing Effect of Related Documents; Reservation of Rights.** Except as modified pursuant hereto, no other changes or modifications to the DIP Loan Agreement and the Related Documents are intended or implied by this Amendment and in all other respects the DIP Loan Agreement and the Related Documents hereby are ratified, restated and confirmed by all parties hereto as of the effective date hereof. To the extent of conflict between the terms of this Amendment, the DIP Loan Agreement and the Related Documents, the terms of this Amendment

-5-

shall govern and control. The DIP Loan Agreement and this Amendment shall be read and construed as one agreement. For the avoidance of doubt, DIP Lender has not and shall not be deemed to have waived any Events of Default that have occurred and are continuing as of the date hereof, or any other Events of Default occurring at any time, and DIP Lender hereby reserves all of its rights under the DIP Loan Agreement, the other Related Documents and applicable law with respect to such Events of Default and no delay on its part in exercising any such rights or remedies should be construed as a waiver or forbearance with respect to any of such rights or remedies.

4.4. **Further Assurances.** At each Borrower's expense, the parties hereto shall execute and deliver such additional documents and take such further action as may be necessary or desirable to effectuate the provisions and purposes of this Amendment.

4.5. **Survival of Representations, Warranties and Covenants.** All representations, warranties, covenants and releases of each Borrower made in this Amendment or any other document furnished in connection with this Amendment shall survive the execution and delivery of this Amendment, and no investigation by the DIP Lender, or any closing, shall affect the representations and warranties or the right of the DIP Lender to rely upon them.

4.6. **Severability.** Any provision of this Amendment held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Amendment.

4.7. **Counterparts.** This Amendment may be executed in any number of counterparts, but all of such counterparts shall together constitute but one and the same agreement.

IN WITNESS WHEREOF, this Amendment is executed and delivered as of the day and year first above written.

**BORROWERS:**

GIORDANO'S ENTERPRISES, INC.
GIORDANO'S FRANCHISE, INC.
GIORDANO'S OF FLORIDA, INC.
GIORDANO'S RESTAURANTS, INC.
GIORDANO'S FAMOUS STUFFED PIZZA, INC.
AMERICANA FOODS, INC.
PIZZA PIZAZZE, INC.
GIORDANO'S, LLC
RANDOLPH PARTNERS, L.P.
RANDOLPH PARTNERS, LLC-308 SERIES
RANDOLPH PARTNERS, LLC - 740 SERIES
JBA EQUIPMENT FINANCE, INC.
OAKBROOK PARTNERS, LLC
RANDOLPH PARTNERS, LLC 20-24 SERIES
RANDOLPH PARTNERS, LLC - 327 SERIES
RANDOLPH PARTNERS, LLC – LAKE STREET SERIES
RANDOLPH PARTNERS, LLC – FORMOSA SERIES
RANDOLPH PARTNERS, LLC – MINOOKA SERIES
RANDOLPH PARTNERS, LLC
RANDOLPH PARTNERS, LLC – OGDEN OSWEGO SERIES
RANDOLPH PARTNERS, LLC –1425 SERIES
RANDOLPH PARTNERS, LLC – MOUNT PROSPECT SERIES
BELMONT PIZZA, INC.
RUSH PIZZA, INC.
GREEKTOWN PIZZA, INC.
ROSEMONT PIZZA, INC.
WILLOWBROOK PIZZA, INC.
RANDOLPH PARTNERS, LLC – SHERBERTH SERIES
ILLINOIS MANAGEMENT COMPANY, INC.
RANDOLPH PARTNERS, LLC – OAKBROOK PARTNERS SERIES
RANDOLPH PARTNERS, LLC – COTTON LANE SERIES
ALTAMONTE PARTNERS, LLC
RANDOLPH PARTNERS, LLC – RANDALL ORCHARD SERIES

By: _____
Philip V. Martino, not individually
but solely in his capacity as chapter 11 Trustee
for each estate of each of the Borrowers

FIFTH THIRD BANK

By _____
Name_____
Title_____

**EXHIBIT B**

**Budget**

Giordano's Enterprises, Inc & Subsidiaries
*(amounts in thousands)*

| CASH FORECAST | Wk 1 11/4 Bud. | Wk 2 11/11 Bud. | Wk 3 11/18 Bud. | Wk 4 11/25 Bud. | Wk 5 12/2 Bud. | Wk 6 12/9 Bud. | Wk 7 12/16 Bud. | Wk 8 12/23 Bud. | Total |
|---|---:|---:|---:|---:|---:|---:|---:|---:|---:|
| Cash Balance, Beginning | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| **Cash Receipts (Excluding Intercompany):** | | | | | | | | | |
| Americana: Franchisee Sales | 53 | 191 | 229 | 175 | 114 | 116 | 203 | 145 | 1,227 |
| GFI: Royalty Fees - Franchisees | - | 30 | 248 | - | - | - | 219 | - | 497 |
| Company-Owned Restaurant Sales | 473 | 473 | 473 | 473 | 473 | 556 | 556 | 556 | 4,032 |
| Other Income | - | - | - | - | - | - | - | - | - |
| **Total Cash Receipts** | 526 | 693 | 950 | 648 | 587 | 672 | 979 | 701 | 5,757 |
| **Cash Disbursements- Operating** | | | | | | | | | |
| Vendor Payments | (282) | (282) | (282) | (297) | (319) | (322) | (322) | (322) | (2,427) |
| 503(b)9 Claim Vendor Payments | - | - | - | - | - | - | - | - | - |
| Freight/Delivery (Americana) | - | (18) | (7) | - | - | (18) | (7) | - | (50) |
| Utilities/Facility Costs | (18) | (12) | (10) | (12) | (16) | (12) | (12) | (10) | (102) |
| Repairs & Maintenance | (21) | (3) | (11) | (6) | (2) | (1) | (16) | (1) | (61) |
| Capital Expenditures | (8) | (1) | (7) | (3) | (1) | (9) | - | (9) | (38) |
| Sales Tax | (37) | (37) | (37) | (37) | (37) | (44) | (44) | (44) | (316) |
| Credit Card & Bank Fees/Discounts/Chargebacks | (40) | - | (5) | - | - | (40) | (5) | - | (90) |
| Payroll | (84) | (239) | (84) | (239) | (87) | (243) | (87) | (243) | (1,306) |
| Benefits | - | (10) | - | - | - | (10) | - | - | (20) |
| Rent | (143) | - | - | - | (41) | (102) | - | - | (286) |
| IT/Phone/Data Expenses | (7) | - | (5) | - | - | (7) | - | (5) | (24) |
| IT Review | - | - | - | - | - | - | - | - | - |
| Marketing/Advertising/Graphics/Promotions | (26) | - | (3) | - | (8) | (18) | (3) | - | (58) |
| Company Store Ad Fee | - | (17) | (3) | - | - | (24) | - | - | (44) |
| Insurance | (22) | - | - | - | (22) | - | - | (22) | (66) |
| Auto | - | - | - | - | - | - | - | - | - |
| Professional Fees - Operating | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (24) |
| M&E, Travel, Misc. AmEx | - | - | - | - | - | - | - | - | - |
| Shipping (Internet Orders - Rosemont) | (15) | (20) | (15) | (20) | (15) | (20) | (15) | (20) | (140) |
| Accounting/Audit/Tax Fees | - | - | - | - | - | - | - | - | - |
| Real Estate Taxes - Current Portion | - | - | - | - | - | - | - | - | - |
| Mokena, Orland Park, Oswego - All Other OpEx | (11) | (7) | (11) | (7) | (11) | (7) | (11) | (7) | (72) |
| Other Misc. Operating Expenses | (19) | (15) | (18) | (13) | (17) | (13) | (17) | (12) | (124) |
| **Total Disbursements- Operating** | (736) | (664) | (501) | (637) | (579) | (893) | (542) | (698) | (5,249) |
| **Cash Flows From Operations** | (210) | 30 | 448 | 11 | 8 | (220) | 437 | 3 | 508 |
| **Cash Disbursements - Intercompany/Related Party/Other** | | | | | | | | | |
| Capital Expenditures - Randolph Partners | - | - | - | - | - | - | - | - | - |
| Capital Expenditures - 740 Rush Street | - | - | - | - | - | - | - | - | - |
| Capital Expenditures - Rosemont Parking Lot | - | - | - | - | - | - | - | - | - |
| Real Estate Taxes - Past Due Portion (Core GEI) | - | - | - | - | - | - | - | - | - |
| Real Estate Taxes - Past Due Portion (Randolph Ptns) | - | - | - | - | - | - | - | - | - |
| Other Transfers | - | - | - | - | - | - | - | - | - |
| **Total Disbursements - Other Non-Operating** | - | - | - | - | - | - | - | - | - |
| **Cash Disbursements- Restructuring:** | | | | | | | | | |
| Legal Counsel - Restructuring (Debtor) | - | - | - | - | - | - | - | - | - |
| Legal Counsel - Secured Lender | - | - | - | (150) | - | - | - | (200) | (350) |
| Legal Counsel - Chapter 11 Trustee | - | - | - | (290) | - | - | - | (275) | (565) |
| Chapter 11 Trustee | - | - | - | (70) | - | - | - | (60) | (130) |
| Restructuring Officer | (60) | (60) | (60) | (60) | (60) | (60) | (60) | (60) | (480) |
| Creditors' Committee | - | - | - | (40) | - | - | - | (140) | (180) |
| Claims Agent | - | (20) | - | (35) | - | - | - | (25) | (80) |
| US Trustee Fees | - | - | - | - | - | - | - | - | - |
| Other Sales Process Expenditures | (5) | - | - | - | (5) | - | - | - | (10) |
| Investment Banker Fees/Expenses | (75) | (5) | - | - | (75) | (5) | - | - | (160) |
| Tax Preparation Fees | - | - | - | - | - | - | - | - | - |
| Legal & Other - Miscellaneous | (5) | - | - | - | (5) | - | - | - | (10) |
| **Total Disbursements- Restructuring** | (145) | (85) | (60) | (645) | (145) | (65) | (60) | (760) | (1,965) |
| **Cash Flows Before Financing/Other** | (355) | (55) | 388 | (634) | (137) | (285) | 377 | (757) | (1,457) |
| **Cash Activity- Financing & Other Income/Expense:** | | | | | | | | | |
| Interest Expense (Note 1) | (330) | - | - | - | (330) | - | - | - | (660) |
| Closing Fee | - | - | - | - | - | - | - | - | - |
| Other | - | - | - | - | - | - | - | - | - |
| **Total Cash Activity- Financing/Other** | (330) | - | - | - | (330) | - | - | - | (660) |
| **Total Cash Activity** | (685) | (55) | 388 | (634) | (467) | (285) | 377 | (757) | (2,117) |
| **Cash Balance, Before DIP Financing** | (635) | (5) | 438 | (584) | (417) | (235) | 427 | (707) | (2,067) |
| Net DIP Funding/(Paydown) | 685 | 55 | (388) | 634 | 467 | 285 | (377) | 757 | 2,117 |
| **Cash Balance, Ending** | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |

Note 1: Interest Expense paid to 5/3 Bank during the period does not include default interest or other fees.