**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| GEI-RP | ) | Case No. 11-06098 |
| | ) | (Substantively Consolidated) |
| Consolidated Debtor. | ) | |
| | ) | Honorable Eugene R. Wedoff |
| | ) | |
| | ) | Hearing:  June 5, 2012 at 10:00 a.m. |

**NOTICE OF FIFTH AND FINAL FEE APPLICATION OF
FREEBORN & PETERS LLP AS COUNSEL TO
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

To:  Service List

PLEASE TAKE NOTICE that on May 11, 2012, Freeborn & Peters LLP ("*F&P*"), as counsel to the official committee of unsecured creditors (the "*Committee*") of Giordano's Enterprises, Inc. and its affiliated debtors (collectively, the "*Debtors*") filed its *Fifth and Final Fee Application as Counsel to the Official Committee of Unsecured Creditors* (the "*Application*") with the United States Bankruptcy Court for the Northern District of Illinois.  By the Application, F&P seeks entry of an order: (a) for final allowance and approval of $823,279.60 in compensation for professional services rendered by F&P to the Committee for the period of March 3, 2011 through April 30, 2012 (the "*Final Fee Application Period*"), and reimbursement of $5,806.87 for actual and necessary expenses incurred by F&P during the Fee Application Period; and (b) authorizing payment to F&P of $73,530.79 representing all amounts owing to F&P on account of the Application.

 PLEASE TAKE FURTHER NOTICE THAT a hearing on the Application will take place before the Honorable Eugene R. Wedoff of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, or whomever may be sitting in his place and stead, at 219 South Dearborn Street, Courtroom 744, Chicago, Illinois on June 5, 2012, at 10:00 a.m.

Objections, if any, to the relief requested in the Application must be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois prior to the hearing on the Fee Application.

At the same time, you should also serve a copy of the objection upon the following so as to be received prior to the hearing on the Fee Application: Freeborn & Peters LLP, 311 South Wacker Dr., Suite 3000, Chicago, Illinois 60606 (Attn:  Richard S. Lauter).

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN FEE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

Dated:  May 11, 2012

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GIORDANO'S ENTERPRISES, INC.**

By: /s/   Richard S. Lauter
      Its Former counsel

Richard S. Lauter, Esq.
Thomas R. Fawkes, Esq.
Brian J. Jackiw, Esq.
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
Telephone:  312.360.6000
Facsimile:  312.360.6573

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| GEI-RP | ) | Case No. 11-06098 |
| | ) | (Substantively Consolidated) |
| Consolidated Debtor. | ) | |
| | ) | Honorable Eugene R. Wedoff |
| | ) | |
| | ) | Hearing:  June 5, 2012 at 10:00 a.m. |

### CERTIFICATE OF SERVICE

I, Richard S. Lauter, an attorney, hereby certify that on May 11, 2012, I caused the attached *Notice of Application* and the *Fifth and Final Fee Application of Freeborn & Peters LLP as Counsel to the Official Committee of Unsecured Creditors* to be filed with the Court and served upon the following parties by the manner listed.

_____/s/ Richard S. Lauter_____

### Service List

Thomas V Askounis, taskounis@askounisdarcy.com; jburt@askounisdarcy.com
Jennifer S. Burt, jburt@askounisdarcy.com
Christopher M. Chaell, ccahill@lowis-gellen.com
Joshua W. Cohen, jwcohen@adypitney.com
Christopher Combest ccombest@quarles.com
Yeny Estrada, Estrada@wildman.com
Thomas R. Fawkes, tfawkes@freebornpeters.com
Faye B. Feinstein, faye.feinstein@quarles.com
Chester H. Foster, Jr. chf@fostersmithlaw.com
James G. Froberg, jgfroberg@lowis-gellen.com; tpeckham@lowis-gellen.com
Cameron M. Gulden, USTPRegion11.es.ecf@usdoj.gov
Aaron L. Hammer, ahammer@freebornpeters.com
Christopher J. Horvay, chorvay@gouldratner.com
Brian J. Jackiw, bjackiw@freebornpeters.com
Vivek Jayaram, vivek@jayaramlaw.com
Gregory J. Jordan, gjordan@jka-law.com
Danielle Juhle, danielle.juhle@goldbergkohn.com; kristina.bunker@goldbergkohn.com
Randall Klein, randall.klein@goldbergkohn.com; kristina.bunker@goldbergkohn.com;
any.halpin@goldbergkohn.com; logan.stortz@goldbergkohn.com
Richard S. Lauter, rlauter@freebornpeters.com

Joanne Lee, jlee@foley.com
Terri M. Long, tmlong@tmlong.com
Philip V. Martino philip.martino@quarles.com
Mary E. Olson , molson@wildman.com
Andre Ordeanu, andre@zanesmith.com
Lars A. Peterson, lapeterson@foley.com
James. M. Philbrick, jmphilbrick@att.net
Jeffrey R. Platt, jplatt@comananderson.com
Mark L. Tradke, mradtke@shawgussis.com
Jason R. Sleezer, jsleezer@skcounsel.com; rybarra@skcounsel.com
Michael J. Small, msmall@foley.com; khall@foley.com
Jeffrey Strange, jstrangelaw@aol.com
Pia N. Thompson, pthompson@gouldratner.com; lnaples@gouldratner.com
Steven B. Towbin, stowbin@shawgussis.com

**<u>Via First Class Mail</u>**

Philip V. Martino
Christopher Combest
Quarles & Brady
300 N. LaSalle
Suite 4000
Chicago, IL 60654

Office of the United States Trustee
Attn: Cameron Gulden
219 S. Dearborn St., Room 873
Chicago, IL 60604

Randall Klein
Goldberg Kohn Ltd.
55 E Monroe Ste 3700
Chicago, IL 60609

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| GEI-RP | ) | Case No. 11-06098 |
| | ) | (Substantively Consolidated) |
| Consolidated Debtor. | ) | |
| | ) | Honorable Eugene R. Wedoff |
| | ) | |
| | ) | Hearing:  June 5, 2012 at 9:30 a.m. |

**FIFTH AND FINAL FEE APPLICATION OF FREEBORN & PETERS LLP**
**AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Freeborn & Peters LLP ("*F&P*"), counsel to the Official Committee of Unsecured

Creditors (the "*Committee*") in the above-captioned case of GEI-RP, hereby submits the *Fifth*

*and Final Fee Application of Freeborn & Peters LLP as Counsel to the Official Committee of*

*Unsecured Creditors* (the "*Final Fee Application*"), relating to services rendered and expenses

incurred from March 3, 2011 through April 30, 2012, and in support thereof, states:

**JURISDICTION AND VENUE**

1.     The Court has jurisdiction over this matter pursuant to sections 1334 and 157(a)

of title 28 of the United States Code and Internal Operating Procedure 15(a) of the United States

District Court for the Northern District of Illinois.  This is a core proceeding pursuant to section

157(b)(2) of title 28 of the United States Code.  Venue is proper in this district pursuant to

sections 1408 and 1409 of title 28 of the United States Code.

2.     The statutory predicates for the relief requested herein are sections 330, 331,

503(b), and 507(a)(1) of the United States Code (the "*Bankruptcy Code*"), Rule 2016 of the

Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rule 5082-1 of the Local

Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "*Local Rules*").

## BACKGROUND

3.      On February 16, 2011 (the "*Petition Date*"), Debtor and the other entities listed in Footnote 1 hereto (collectively, the "*Separate Debtors*" or "*Debtors*")[1] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (the "*Court*").[2]

4.      On March 2, 2011, the Debtors filed a *Motion to Establish Interim Fee and Expense Reimbursement Procedure* and the Court entered an order (the "*Compensation Procedures Order*") granting the motion on March 9, 2011.   An amended Compensation Procedures Order was entered on June 1, 2011

5.      On March 3, 2011, the Office of the United States Trustee (the "*U.S. Trustee*") appointed the Committee as an official committee to represent the interests of unsecured creditors of the Debtors pursuant to section 1102 of the Bankruptcy Code.

6.      On that same day, the Committee selected F&P as its counsel, and on March 17, 2011, the Court entered an order authorizing the retention of F&P as counsel to the Committee, effective as of March 3, 2011.

---

[1]      Collectively, the Debtors are:  Giordano's Enterprises, Inc.; Illinois Management Company, Inc.; Giordano's Franchise, Inc.; JBA Equipment Finance, Inc.; Giordano's of Florida, Inc.; Giordano's Restaurants, Inc.; Americana Foods, Inc,; Pizza Pizazze, Inc.; Giordano's LLC; Randolph Partners, LLC; Randolph Partners, LLC – Lake Street Series; Randolph Partners, LLC – Formosa Series; Randolph Partners, LLC – Minooka Series; Randolph Partners, LP; Randolph Partners, LLC – Ogden Oswego Series; Randolph Partners, LLC – 1425 Series; Randolph Partners, LLC – Mount Prospect Series; Belmont Pizza, Inc.; Rush Pizza, Inc.;  Greektown Pizza, Inc.; Rosemont Pizza, Inc.; Willowbrook Pizza, Inc.; Randolph Partners, LLC - Cotton Lane Series; Randolph Partners, LLC – Randall Orchard Series; Altmonte Partners, LLC; Oakbrook Partners, LLC; Randolph Partners, LLC 20-24 Series; Randolph Partners, LLC – 327 Series;  Randolph Partners, LLC – 308 Series; Randolph Partners, LLC – Sherberth Series.

[2]      On November 8 and 9, 2011, the Court entered orders substantively consolidating each of the individual chapter 11 cases.  On January 31, 2012, this Court entered an order approving a consolidated case caption.

7.     On May 1, 2012, an order was entered converting the Debtor's case to a case under chapter 7 of the Bankruptcy Code, thereby disbanding the Committee and terminating F&P's representation of the Committee.

8.     Pursuant to the Compensation Procedures Order, professionals retained in the Debtors' cases (including F&P), are allowed to submit monthly fee statements (the "*Monthly Statements*") in order to receive interim approval and payment of compensation. The Debtors, by the chapter 11 trustee appointed in these cases (the "*Trustee*"), are authorized to pay retained professionals 80% of requested compensation and 100% of reimbursable expenses for each Monthly Statement if no objections are raised within ten (10) days of receipt thereof.

9.     On May 1, 2012, an order was entered converting this case to a case under chapter 7 of the Bankruptcy Code, thereby disbanding the Committee and terminating F&P's representation of the Committee.

## PREVIOUS FEE APPLICATIONS

10.     Below is a summary of previous fee applications submitted to this Court, including fees allowed, expenses allowed and the aggregate amounts paid.

| Date Filed | Period Covered | Fees Requested | Expenses Requested | Fees Allowed | Expenses Allowed | Fees and Expenses Paid |
|---|---|---|---|---|---|---|
| 6/20/2011 | Mar – May 2011 | $235,066.50 | $3,247.52 | $214,214.15 | $3,247.54 | $217,461.69 |
| 9/14/2011 | June – Aug 2011 | $167,800.35 | $1,585.51 | $162,870.15 | $208.03 | $163,078.18 |
| 12/16/2011 | Sept – Nov 2011 | $173,801.00 | $421.54 | $173,053.50 | $252.66 | $173,306.16 |
| 3/20/2012 | Dec 2011 – Feb 2012 | $157,233.00 | $1,554.92 | $157,066.30 | $1,347.24 | $158,413.54 |

11.     To date, F&P has received $755,259.57, of an allowed $755,259.57, on account of the First, Second, Third, and Fourth Interim Fee Applications (attached hereto as *Exhibits A, B, C and D* respectively) and F&P's March Monthly Statement (defined below). This does not

take into account F&P's April Monthly Statement (defined below).   Accordingly, F&P is still owed $73,530.79 on account of its allowed but unpaid fees included in the March Monthly Statement and its unpaid fees and expenses in the April Monthly Statement.  The April Monthly Statement has been filed concurrently with the Final Fee Application.

12.     F&P has rendered services as detailed in its March and April Monthly Statements. F&P has filed its April Monthly Statement concurrently with this Final Fee Application, but seeks final approval for amounts set forth in the April Monthly Statement in this Final Fee Application.

## RELIEF REQUESTED

13.     F&P rendered services on behalf of the Committee from March 3, 2011 through April 30, 2012 (the "*Final Fee Application Period*").  For the Final Fee Application Period, and as set forth more fully below, F&P seeks final approval of compensation in the amount of $823,279.60 and reimbursable expenses in the amount of $5,806.87, for a total of $829,086.47.

14.     Pursuant to the Compensation Procedures Order, F&P filed Monthly Statements for the months of March 2012 and April 2012.  These Monthly Statements are described below.

15.     On April 23, 2012, F&P served upon the required notice parties a monthly statement of fees and expenses for the month of March 2012 (the "*March 2012 Monthly Statement*"), seeking interim compensation in the amount of $42,788.40 (80% of the $53,485.50 in services billed) and reimbursement of actual and necessary expenses in the amount of $507.71, for a total of $43,296.11.  A true and correct copy of the March 2012 Monthly Statement is attached hereto and incorporated herein as *Exhibit E*.  No objections were filed with respect to the March 2012 Monthly Statement.

16.     On May 10, 2012, F&P filed its monthly statement of fees and expenses for the month of April 2012 (the "*April 2012 Monthly Statement*"), seeking allowance of compensation

in the amount of $62,590.00 and reimbursement of actual and necessary expenses in the amount of $243.69, for a total of $62,833.69.    A true and correct copy of the April 2012 Monthly Statement is attached hereto and incorporated herein as *Exhibit F*.

17.    By this Final Fee Application, F&P seeks an order: (1) allowing, on a final basis $823,279.60 in compensation and $5,806.87 in reimbursable expenses for the Final Fee Application Period as chapter 11 administrative expenses of the Debtors' estates pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code; and (2) authorizing payment to F&P of $73,530.79, representing all unpaid, non-deferred amounts owing to F&P on account of the Final Fee Application, as fully set forth below.

## DISCUSSION

18.    Section 330(a) of the Bankruptcy Code provides, in pertinent part, that:

[T]he court may award . . . reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person . . . and . . . reimbursement for actual, necessary expenses. . . .  In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

19.    The Seventh Circuit Court of Appeals has stated that:

The computation of hourly fees depends on the number of hours "reasonably" expended, the hourly rate of each [professional], the calculation of the time value of money (to account for delay in payment), potential increases and decreases to account for risk and the results obtained, and a complex of other considerations under the heading of "billing judgment."

*Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986).  Additionally, other courts of appeal have recognized that:

> [I]t is important for the court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation.  It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner.  On the other hand, it is also possible that [the client] would not have enjoyed the success it did had its counsel managed matters differently.

*Boston and Main Corp. v. Moore*, 776 F.2d 2, 10 (1st Cir. 1985) (citations omitted).

20.    In reviewing the Final Fee Application, the Court should be guided by the Seventh Circuit's instruction to ascertain whether such services were rendered and billed in accordance with the established market for legal services in similar matters:

> [I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.

*In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992); *see Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (8th Cir. 1984) (section 330 "is meant to encourage high standards of professional legal practice in the bankruptcy courts. . . .  Bankruptcy courts must consider whether the fee awards are commensurate with fees for professional services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in bankruptcy courts.").

21.    In *Continental Securities*, the Seventh Circuit found error in the lower court's practice of: (a) placing ceilings on the hourly rates of all lawyers; (b) refusing to allow paralegal services to be compensated at market rate; (c) refusing to award a risk multiplier; (d) making large across-the-board cuts in research time; (e) making large across-the-board cuts in conference time; and (f) refusing to allow attorneys to bill computerized legal research services (*e.g.*, LEXIS). *Continental Illinois Securities Litigation*, 962 F.2d at 568-70.

22.    In evaluating the Final Fee Application, the Court should consider the novelty and difficulty of the issues presented, the skill required to perform the legal services properly, the

preclusion of other employment caused by F&P's retention in this case, the customary fees charged in similar cases, the existence of time limits under which the services were rendered, the results obtained, the experience and ability of the attorneys involved, and the amount of awards of compensation in similar cases. *See In re Alberto*, 121 B.R. 531, 534 (Bankr. N.D. Ill. 1990).

23.    F&P's hourly rates of compensation for those attorneys and para-professionals during the Fee Application Period range from $205 to $780 (however, no professional with an hourly rate in excess of $625 has performed services herein).  Those rates are comparable to rates charged by other practitioners having the same amount of experience, expertise, and standing for similar services in this jurisdiction.  F&P consistently and consciously made every reasonable effort to represent the Committee in the most economical, efficient, and practical manner possible.

24.    A summary of the compensation requested herein regarding each of F&P's professionals and para-professionals is set forth below:

| 2011 Timekeeper | Title | Year of Illinois Bar Admission | Rate | Total Hours | Total Fees |
|---|---|---|---|---|---|
| Anderson, Susan A. | Admin | N/A | $45.00 | 2.0 | $90.00 |
| Brandess, Michael A. | Associate | 2009 | $250.00 | 2.1 | $525.00 |
| Burnett, Erin T. | Associate | 2011 | $305.00 | 4.2 | $1,281.00 |
| Curth, Daniel C. | Partner | 1995 | $480.00 | 25.8 | $12,384.00 |
| Eggert, Devon J. | Associate | 2006 | $310.00 | 1.5 | $465.00 |
| Fawkes, Thomas R. | Partner | 2002 | $495.00 | 292.9 | $144,985.50 |
| Gray, James S. | Partner | 1969 | $520.00 | 8.1 | $4,212.00 |
| Hammer, Aaron L. | Partner | 1997 | $625.00 | 147.7 | $92,312.50 |
| Isenberg, Shira R. | Senior Counsel | 2003 | $390.00 | 101.6 | $39,624.00 |
| Jackiw, Brian J. | Associate | 2008 | $290.00 | 213.5 | $61,915.00 |
| Kelly, Michael J. | Partner | 1980 | $565.00 | 2.4 | $1,356.00 |
| Kim, Anne | Paralegal | N/A | $236.50 | 7.9 | $1,868.35 |
| Lauter, Richard S. | Partner | 1982 | $575.00 | 427.4 | $245,755.00 |
| Mattson, Jeff | Partner | 1990 | $535.00 | 1.5 | $802.50 |

| | | | | | |
|---|---|---|---|---|---|
| Morris, Wendy E. | Associate | 2003 | $330.00 | 33.0 | $10,890.00 |
| Pieper, Laura C. | Associate | 2001 | $335.00 | 3.0 | $1,005.00 |
| Roddy, Joseph P. | Partner | 1990 | $495.00 | 4.5 | $2,227.50 |
| Schlott, Kim L. | Paralegal | N/A | $250.00 | 0.9 | $225.00 |
| Scotti, III, Michael J. | Partner | 1991 | $510.00 | 16.9 | $8,619.00 |
| Shapiro, John T. | Partner | 1991 | $515.00 | 9.9 | $5,098.50 |
| Sheldon, Kathryn C | Paralegal | N/A | $220.00 | 35.7 | $7,854.00 |
| Smith, Brian A. | Partner | 1998 | $445.00 | 15.9 | $7,075.50 |
| Southwell, Todd R. | Partner | 1997 | $425.00 | 27.5 | $11,687.50 |
| Tovar-Risley, Jackline | Paralegal | N/A | $205.00 | 10.1 | $2,070.50 |
| | | | **Total:** | | $664,328.35 |
| | | | | **Blended Rate:** | $475.88 |

| 2012 Timekeeper | Title | Year of Illinois Bar Admission | Rate | Total Hours | Total Fees |
|---|---|---|---|---|---|
| Curth, Daniel C. | Partner | 1995 | $510.00 | 6.6 | $3,366.00 |
| Eggert, Devon J. | Associate | 2006 | $350.00 | 10.9 | $3,815.00 |
| Fawkes, Thomas R. | Partner | 2002 | $510.00 | 108.0 | $55,080.00 |
| Hezdra, Jacqueline E. | Paralegal | N/A | $205.00 | 10.5 | $2,152.50 |
| Isenberg, Shira R. | Senior Counsel | 2003 | $395.00 | 0.3 | $118.50 |
| Jackiw, Brian J. | Associate | 2008 | $305.00 | 72.7 | $22,173.50 |
| Lauter, Richard S. | Partner | 1982 | $595.00 | 144.1 | $85,739.50 |
| Morris, Wendy E. | Associate | 2003 | $350.00 | 0.5 | $175.00 |
| Rodgers, Elizabeth L. | Associate | 2010 | $250.00 | 40.8 | $10,200.00 |
| Scotti, III, Michael J. | Partner | 1991 | $540.00 | 0.7 | $378.00 |
| Sheldon, Kathryn C. | Paralegal | N/A | $250.00 | 9.8 | $2,450.00 |
| | | | **Total:** | 404.9 | $185,648.00 |
| | | | | **Blended Rate:** | $458.50 |

25.    No agreement or understanding exists between F&P and any other person for the
sharing of compensation received or to be received in connection with the former chapter 11
cases, other than as disclosed or authorized pursuant to the Bankruptcy Code, Bankruptcy Rules,
and the Local Rules.

26.    F&P reserves the right to correct, amend, or supplement this Final Fee Application, including, without limitation, to seek payment in the event this Final Fee Application is not approved in full.

### SERVICES PERFORMED

27.    This Final Fee Application sets forth in detail the work performed by F&P and the time spent during the Fee Application Period.

**A.    General                                                    $131,989.50**

28.    F&P spent 252.9 hours at a cost of $131,989.50 on general matters.  This category primarily includes time spent reviewing incoming pleadings, correspondence, and notices, preparing for and attending Court hearings on general case matters, corresponding with parties-in-interest concerning general case matters, and performing necessary administrative tasks typically associated with a committee representation (including performing court filings, maintaining and updating dockets, calendars, and correspondence files, and retrieving necessary documents).  This category also includes time spent discussing pending case issues with the Office of the United States Trustee, the Trustee and counsel for Fifth Third Bank.   Finally, this category includes matters which encompass more than one discrete category.

29.    Also included in this category is F&P's participation in the negotiation and documentation of a global settlement between the Trustee, the Committee, Fifth Third Bank, N.A. and a substantial number of the Debtors' franchisees, which was necessary in order for the Trustee to proceed with a proposed sale of substantially all of the Debtors' operating assets and real estate**.**

**B.    Litigation                                                  $32,526.50**

30.    F&P spent 63.1 hours at a cost of $32,526.50 on litigation matters.  This category primarily includes time spent drafting an adversary complaint against Fifth Third, the Debtors'

senior secured lender, and in negotiating and extending a reservation of rights and standstill period with Fifth Third concerning the extension of the Committee's investigation period and the preservation of the Committee's claims.  This category also includes time spent (1) reviewing and negotiating settlement terms between the debtors and the former Chief Financial Officer; (2) researching potential fraudulent transfer actions held by the estates; and (3) reviewing certain class action litigation and appellate filings related to the attempted removal of the state court litigation filed by John and Eva Apostolou to this Court.

**C.    F&P Retention and Fee Applications                $68,454.00**

31.    F&P spent 166.0 hours at a cost of $68,454.00 on F&P retention and fee application matters.  This category includes time spent (1) preparing F&P's initial retention application (and defending against an objection to such retention), (2) preparing F&P's Monthly Statements throughout the entirety of these cases, (3) preparing the interim fee applications and this Final Fee Application, (4) reviewing time entries of F&P attorneys and paraprofessionals to ensure compliance with the time detail requirements of this Court and the United States Trustee and (5) redaction of time entries to preserve privileges associated with the Apostolou litigation, at the request of the Trustee.

**D.    Creditor Inquiries and Negotiations                $4,284.50**

32.    F&P spent 10.2 hours at a cost of $4,284.50 on creditor inquiries and negotiations.  This category primarily consists of time spent addressing inquiries of unsecured creditors concerning the status of the Debtors' cases and of their respective claims, as well as addressing questions from creditors concerning the claims bar date set by the Trustee and the prosecution of estate claims.

**E.**   **Asset Sales**                                                 **$121,053.00**

33.    F&P spent 232.8 hours at a cost of $121,053.00 on asset sale issues.   This category primarily consists of time spent formulating the mechanics of the anticipated sale of the Debtors' assets, engaging in discussions with parties-in-interest, including the Debtors, Fifth Third, the Trustee and his retained professionals concerning the sale process, attending periodic conference calls held by the Trustee's investment banker, William Blair & Company ("*William Blair*"), and his real estate consultant, Hilco Real Estate ("*Hilco*"), concerning the status of the sale process and bids received for the Debtors' assets, reviewing the data room established by William Blair and Hilco, engaging in discussions with potential bidders for the Debtors' assets and reviewing and commenting upon the proposed transactional documents prepared by the Trustee and his retained professionals.

34.    Time was further spent reviewing and analyzing bid packages and asset purchase agreements submitted by multiple bidders, negotiating with multiple bidders, participating in conferences with multiple interested parties, reviewing and commenting upon the Trustee's proposed bidding procedures, and attending hearings related to motions of the Trustee to sell individual pieces of Debtors' property.

35.    F&P attorneys also attended and participated in the November 15, 2011 auction of the Debtors' assets and prepared for the same while keeping the Committee informed of the process.  During the auction, F&P, on behalf of the Committee, was frequently consulted by the Trustee and his professionals concerning the auction process and the qualification of certain received bids, kept the Committee members consistently apprised of the status and worked with bidders to enhance the aggregate sale price of the Debtors' assets for the benefit of creditors. Finally, F&P attorneys worked with the Trustee and other parties to effectuate a closing of the various sale transactions resulting from the auction and approved by the Court.  Time was later

spent reviewing and analyzing post-sale reports, reviewing solvency analyses, and reviewing and commenting upon the Trustee's motion to sell the Sherberth property and objections filed thereto.

**F.    Executory Contracts and Unexpired Leases        $2,345.50**

36.    F&P spent 4.6 hours at a cost of $2,345.50 on executory contracts and unexpired lease issues.  This category primarily consist of time spent reviewing and appearing on motions filed by the Trustee to reject certain of the Debtors' executory contracts and unexpired leases.

**G.    Plan and Disclosure Statement        $1,444.50**

37.    F&P spent 2.9 hours at a cost of $1,444.50 on Plan and Disclosure Statement issues.  This category primarily includes time spent evaluating the costs and benefits of a chapter 11 liquidation plan, and conferences and correspondence with the Office of the United States Trustee and the Trustee regarding chapter 11 plan confirmation issues.

**H.    Claims Analysis        $9,707.00**

38.    F&P spent 22.8 hours at a cost of $9,707.00 on issues related to claims analysis. This category primarily consists of time spent preparing and litigating objections to claims filed by John and Eva Apostolou, and conferences with the Trustee and his advisors regarding the same.  Further time was spent discussing potential settlement of the various class action claims asserted against the estates.  Additional time was spent reviewing and analyzing claims filed by the Internal Revenue Service.

**I.    Secured Creditor Issues        $158,064.50**

39.    F&P spent 343.8 hours at a cost of $158,064.50 on secured creditor issues.  This category primarily consists of time spent conducting a collateral analysis of Fifth Third's collateral and engaging in negotiations with Fifth Third concerning potential Committee challenges to the validity, priority, and extent of its liens, and in formulating the terms of a

reservation of rights and standstill agreement related to the same.  This category also includes time spent reviewing and commenting upon the cash collateral motion, cash collateral budgets prepared by the Trustee's professionals, as well as engaging in negotiations with Bank of America, N.A. ("*BofA*"), a lender with respect to three Giordano's store locations owned by non-Debtor affiliates, concerning certain payments to be made by Debtor Randolph Partners in respect of obligations owed to BofA.    Further time was spent addressing issues related to the estates' release of  BofA pursuant to the sale of substantially all of the Debtors' assets, drafting the motion to approve the Bank of America release, and reviewing and commenting upon cash collateral budgets prepared by the Trustee's professionals.

**J.     Other Professional Retention                        $18,435.00**

40.    F&P spent 30.5 hours at a cost of $18,435.00 on the retention of other professionals.  This category primarily consists of time spent reviewing applications to employ other estate professionals (including those retained by the Trustee), engaging in lengthy interviews of candidates to serve as investment banker and real estate consultant in anticipation of a sale of substantially all of the Debtors' assets.  Further time was spent reviewing monthly and interim fee applications of the Debtors' and Trustee's professionals and attending hearings on the same.

**K.     Committee Meetings and Governance                  $63,985.00**

41.    F&P spent 137.2 hours at a cost of $63,985.00 on committee meetings and governance issues.  This category primarily consists of time spent preparing for and conducting meetings of the Committee, during which the Committee was apprised of the status of multiple issues in these cases and during which F&P was authorized to take certain actions on behalf thereof, ensuring that the Committee was governed pursuant to applicable requirements and addressing inquiries of Committee members with respect thereto.

**L.      Schedules and Reports**                                    **$12,034.50**

42.    F&P spent 27.9 hours at a cost of $12,034.50 on schedules and reports.  This category primarily consists of time spent reviewing and analyzing the monthly operating reports filed by the Trustee in these cases to ensure proper operations.  Additional time was spent reviewing and analyzing the Debtors' schedules of assets and liabilities and statements of financial affairs.

**M.      Investigation of Operations**                              **$14,806.50**

43.    F&P spent 33.0 hours at a cost of $14,806.50 investigating the operations of the Debtors.  This category initially consisted of a preliminary investigation of the Debtors' operations, corporate formalities, and assets to determine whether substantive consolidation would be appropriate.  Later, time was spend on discussions with the Trustee and Fifth Third concerning a potential substantive consolidation of the Debtors' estates, as well as certain non-Debtor affiliates, research concerning substantive consolidation issues and the preparation of a motion, pursuant to Bankruptcy Rule 2004, seeking discovery relevant to non- Debtor substantive consolidation.

**N.      Tax Issues**                                                **$9,785.35**

44.    F&P spent 25.5 hours at a cost of $9,785.35 on tax issues.  This category primarily consists of time spent researching and analyzing tax liabilities of the Debtors stemming from its election as an S-Corporation under the Internal Revenue Code, and evaluating the claims filed by the Internal Revenue Service.

**O.     Apostolou Litigation**                                    **$200,971.00**

45.     F&P spent 445.7 hours at a cost of $200,971.00 on Apostolou Litigation issues. This category primarily consists of time spent researching potential claims and causes of action against the former principals of the Debtors, John and Eva Apostolou, preparing a draft adversary complaint against the Apostolous seeking the avoidance and recovery of fraudulent transfers received in relevant periods prior to the Petition Date, and correspondence and conferences with the Trustee and his advisors regarding the adversary complaint.  Research for the complaint also included several causes of action related to breach of fiduciary duties.

46.     In addition, time was spent corresponding with the Trustee concerning the claims and causes of action raised against Basil and George Apostolou, which were the subject of two adversary proceedings filed by the Trustee.  Finally, time was spent engaging in discussions with the Trustee, Fifth Third Bank and counsel to the Apostolous concerning the pending state court litigation filed by the Apostolous against Fifth Third Bank, certain of its employees, certain of the Debtors' franchisees and certain of the Debtors' professionals.

47.     Further time was spent negotiating a settlement to the Apostolou litigation in conjunction with the state court litigation filed by the Apostolous, and the litigation filed against Basil and George Apostolou.   The settlement entailed payout of certain amounts to the Apostolous, dismissal of the several Adversary Proceedings, dismissal of the state court litigation filed by the Apostolous against Fifth Third, and transferring some real property to the Apostolous.   When the settlement agreed to by the Trustee was deemed unacceptable by the Committee, F&P drafted and prosecuted an objection to the proposed settlement, and drafted and prosecuted a companion motion seeking a declaratory judgment concerning the scope of an indemnification provided to Fifth Third under the pre- and post-petition credit facilities with the Debtors, at the request of the Committee.  These filings resulted in a contested hearing and oral

argument on the reasonableness of the Trustee's settlement.  Additional time spent in this matter included multiple conferences and correspondence with the Committee members to keep them apprised of the status of the proposed settlement.

## REASONABLE EXPENSES INCURRED

48.     Detailed itemizations of all expenses incurred are incorporated in the detailed itemization of expenses attached hereto.  Expenses during the Fee Application Period were incurred in the following general categories:

(a)     Photocopying:  F&P incurred copying and printing charges in the amount of $2,468.40.  F&P charges for copies at the rate of $.10 per page.  F&P maintains a record of in-house copies made through a computerized system.  This procedure requires an operator to key in a client's code number on a keypad attached to the copier.  For large projects, F&P uses outside copy services for purposes of efficiency and charges amounts actually incurred.  No such outside copying service was used in this case.

(b)     Computer Legal Research: The computerized research services, charges for which amounted to $3,144.54, allowed F&P to reduce the time expended in researching complex areas of law.  The information obtained from such computer assisted research was instrumental in preparing certain pleadings.  The Seventh Circuit has stated that even the most experienced attorney must conduct (or have conducted for her) research to evaluate changes in the law, address new issues, and refresh her recollection.  Failure to do so would be to court sanctions or a malpractice suit.  *Continental Illinois Securities Litigation*, 962 F.2d at 570.

F&P acknowledges that its previous requests for reimbursement of computer legal research charges have been denied by the Court, and accordingly, F&P does not seek reimbursement for such charges in this Final Fee Application.

(c)    <u>Teleconferencing Expenses</u>:  F&P incurred expenses in the amount of $551.51 for teleconferencing fees.  F&P conducts Committee meetings by telephone, rather than in person, due to the geographic disparity of the Committee members and the high cost and inconvenience associated with in-person meetings.  F&P uses outside teleconferencing providers, Arkadin and Rollcall, in order to efficiently conduct Committee teleconferences.

(d)    <u>Express Mail Expenses</u>:  F&P incurred expenses in the amount of $169.83 for express mail delivery.  F&P sent documents to the Trustee's counsel pursuant to the Trustee's request.

(e)    <u>Messenger Expenses</u>:  F&P incurred expenses in the amount of $13.86 for messenger services.   Documents were required at the November 15, 2011 auction within a shortened timeframe requiring the use of a messenger.

(f)    <u>Postage</u>:  F&P incurred expenses in the amount of $15.48 for postage. This was necessary to mail notices and information to interested parties.

(g)    <u>Court Reporter's Fee</u>:  F&P incurred expenses in the amount of $300.80 based on its request for hearing transcripts relevant to the Committee's strategy in these cases.

(h)    <u>Miscellaneous Expenses</u>:   F&P incurred expenses in the amount of $603.47 for miscellaneous expenses, including parking reimbursement, meal and conference expenses and transportation to and from the November 15, 2011 auction and parking while working on holidays in order to draft the complaint against the Apostolous in a timely manner in accordance with the Trustee's request.  These expenses were necessary in order to conduct in-person meetings with potential bidders in order to discuss the sale process and for the Committee to be represented at the auction as well as to timely draft the complaint referenced above.

(i)   <u>Filing Fees</u>:   F&P incurred expenses in the amount of $293.00 for filing a complaint against the Apostolous which initiated an adversary proceeding against the former owners of the Debtors.

49.   All expenses incurred by F&P in connection with its representation of the Committee were ordinary and necessary expenses.  All expenses billed to the Committee were billed in the same manner as F&P bills non-bankruptcy clients.

50.   F&P does not bill its clients or seek compensation in this Final Fee Application for certain overhead expenses, such as local and long-distance telephone calls, secretarial services, and facsimile transmissions.  Such expenses are factored into F&P's hourly rates.  F&P has not included certain other charges described herein in its overhead because it has determined that it is fairer to its smaller clients who use proportionately less of these services to have these expenses billed separately.

## <u>BENEFIT TO THE ESTATES</u>

51.   F&P remained active on all matters in its representation of the Committee during the chapter 11 proceedings.

52.   F&P submits that the services rendered during the Final Fee Application Period were beneficial to the estates and unsecured creditors, and that its requested compensation should be approved on a final basis.  As the Court is aware, the Committee actively participated in this case, helping to bring about the positive sale of the Debtors' assets, and working on behalf of all unsecured creditors to the best of its abilities.  Finally, F&P has provided valuable assistance and guidance to the Committee and the constituents it represents, in the furtherance of maximizing value for those parties.  In particular, the Committee's involvement in the sale process led by the Trustee resulted in payment in full to Fifth Third and a surplus that will be distributed by the Trustee to general unsecured creditors.

53.     F&P submits that the aforementioned services, among others, benefited the estates by ensuring that the Debtors' assets were properly preserved and administered, and that the value of the estates are maximized for the benefit of all parties-in-interest.

## NOTICE

54.     Pursuant to Bankruptcy Rule 2002(a)(6) and the Compensation Procedures Order, twenty-one days' notice of this Final Fee Application has been provided to: (a) the Trustee and his counsel; (b) the Office of the United States Trustee; (c) counsel to Fifth Third; and (d) all parties requesting electronic service pursuant to Bankruptcy Rule 2002.

**WHEREFORE**, F&P respectfully requests that the Court enter an order:

(a)     allowing F&P, on a final basis, $823,279.60 in compensation for the Final Fee Application Period as chapter 11 administrative expenses of the Debtors' estates pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(b)     allowing F&P, on a final basis, $5,806.87 in reimbursable expenses for the Final Fee Application Period as chapter 11 administrative expenses of the Debtors' estates pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(c)     authorizing payment to F&P of $73,530.79, representing amounts owing to F&P on account of the Final Fee Application; and

(d)     granting such other and further relief as the Court deems just and proper.

Dated:  May 11, 2012

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
GIORDANO'S ENTERPRISES, INC.**

By: /s/   Richard S. Lauter
      Its Former Counsel

      Richard S. Lauter, Esq.
      Thomas R. Fawkes, Esq.
      Brian J. Jackiw, Esq.
      FREEBORN & PETERS LLP
      311 South Wacker Drive, Suite 3000
      Chicago, Illinois 60606-6677
      Telephone:  312.360.6000
      Facsimile:   312.360.6573